**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 3:12-cr-045 |
| vs. | ) |
| ARASH MOAZZENI, | ) |
| Defendant. | ) |

**DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

Defendant, Arash Moazzeni ("Moazzeni"), by counsel, hereby files the following objections to the Presentence Investigation Report ("PSR") prepared by the United States Probation Office for the Eastern District of Virginia (the "Probation Office").

**ARGUMENT**

As detailed more fully below, the loss amount and amount for restitution provided in the PSR should be revised downward as follows: (1) Loss amount: $272,494.76; (2) Restitution amount: $242,975.19.

**I. Loss Amount**

The PSR provides that the total loss amount in this case is $488,930.95. This is incorrect. First, the amount of loss attributed to Count IX (the "Bankruptcy Count") is calculated based on the amounts claimed by creditors in Moazzeni's bankruptcy schedules. This is an incorrect method of calculating losses in this case. The loss should instead be calculated as the value of the assets Moazzeni concealed from his creditors, as this best reflects the economic realities of the loss suffered in this particular case. Second, the loss amounts for Count I (the "Tax Count") are at variance with the amounts claimed due and owing by the IRS and the Virginia Department of Taxation.

### A. The Bankruptcy Loss Amount Is Improperly Calculated.

The PSR states that the total loss to victims of Moazzeni's bankruptcy fraud is $190,320.27. (*See* PSR at 13–16, 32.) To calculate this amount, the Probation Office compiled the names of unsecured creditors in Moazzeni's bankruptcy and aggregated the amounts appearing on the schedules. This is an incorrect method of calculating loss given the facts of this case.

According to the Sentencing Guidelines, "loss" is defined as the greater of either "actual loss" or "intended loss." U.S.S.G. § 2B1.1, cmt. n.2(A). In cases where a bankruptcy court refuses to discharge a debtor's liabilities, no actual loss results from the defendant's fraud. *See United States v. Wheeldon*, 313 F.3d 1070, 1072 (8th Cir. 2002). Courts therefore look to the probable intended loss for purposes of calculating a sentencing enhancement under § 2B1.1(b)(1). *See id*. The loss "intended to result from [the defendant's] offense," U.S.S.G. § 2B1.1 cmt. n.2(A)(ii), is "the amount of loss [the defendant] intended to cause by concealing assets." *United States v. Hughes*, 401 F.3d 540, 557 (4th Cir. 2005).

While there is no categorical rule on calculating losses in cases involving bankruptcy fraud, a general rule for making this determination emerges from Eighth Circuit precedent. In *United States v. Dolan*, 120 F.3d 856 (8th Cir. 1997), the defendant committed bankruptcy fraud by concealing assets well in excess of the debt to be discharged. *Id*. at 862, 870–71. Under those circumstances, the Eighth Circuit concluded that the intended loss should be calculated "by using either the value of the assets concealed or the value of the debtor's liabilities, whichever is less." *Id*. at 870. In contrast to *Dolan*, in *United States v. Wheeldon*, 313 F.3d 1070 (8th Cir. 2002), the defendant filed for bankruptcy protection and concealed assets worth much less than the debt scheduled to be discharged. *Id*. at 1072. The Eighth Circuit found that "[i]t belies reality to argue that [the defendant], or a debtor similarly situated, intended to defraud his creditors of everything he owed them solely because he failed to disclose all of his (rather modest) assets." *Id*. at 1073.

Accordingly, the court held that intended loss should be limited to the value of the concealed assets to which the defendant's creditors would have been aware had the bankruptcy petition been truthful. *Id.*; *accord United States v. Hughes*, 401 F.3d 540, 557 (4th Cir. 2005) (noting that "in determining the amount of loss in a bankruptcy fraud case, courts may look to the amount of loss [the defendant] intended to cause by concealing assets") (internal citations omitted). The Eighth Circuit in *United States v. Holthaus*, 486 F.3d 451 (8th Cir. 2007), noted that this general rule may not be applicable in cases where "a defendant's fraudulent concealment creates an illusory eligibility for bankruptcy . . . ." *Id.* at 455.

In the joint bankruptcy case filed on October 15, 2005, Moazzeni (and his wife, Diane Tarangelo) filed schedules in which they listed liabilities of $429,748.91. (Doc. No. 17, *In re Moazzeni and Tarangelo*, No. 05-42670-DOT (E.D. Va. Bankr.). They listed assets of $122,230.00. Yet, Moazzeni admitted that he concealed assets from his creditors. The assets concealed and their estimated values at the time of concealment are as follows:

| **Asset** | **Value** |
|---|---|
| Residence located at 7424 Secretariat Drive, Midlothian (Chesterfield County), Virginia | Assessed Value: 2005 tax assessed value: $132,000; Citibank assessed value: $208,000. <br><br> Encumbrances: Outstanding Mortgages: First Mortgage: $116,111.75; Equity Line of Credit: $50,000. Total secured liens on property: $166,111.75. <br><br> Equity Available to Unsecured Creditors: Maximum amount of equity in property available to creditors: $41,888.25. |
| Residential lot located in Pendleton County, West Virginia | Original Loan Amount: $11,500.00 <br><br> Outstanding Loan Balance: $10,817.45 <br><br> Equity Available to Unsecured Creditors: $0 |

| | |
|---|---|
| E*Trade bank savings account ending in – 7637 | $7,634.02 |
| Wachovia bank checking account ending in – 3793 | $655.08 |
| Scottrade stock brokerage account ending in – 27–17 | Margin Account[1]: (-$36,616.54)<br><br>Amount Available to Unsecured Creditors: $0 |
| Blue Grass Valley Bank mortgage to purchase Pendleton County, West Virginia residential lot, account ending in – 2485 | No value to unsecured creditors. |
| Citibank F.S.B. home equity loan, line of credit ending in – 0000 | No value to unsecured creditors (agreed in plea to count as loss as part of offense) |
| Equity One loan to purchase Trail Manor travel trailer | No value to unsecured creditors. |

Because the value of the assets concealed are much less than the amount of Moazzeni's liabilities, the loss should be limited to the value of the concealed assets of which his creditors would have been aware had his 2005 Bankruptcy petition been accurate. This amount is $50,177.35. The amount must also be increased to reflect the loss attributed to the Citibank Line of Credit owed to Citibank N.A., F.S.B., which is $49,655.00. The total loss amount attributable to Count 9 is therefore $99,832.55.

---

[1] Generally, a "margin account" is a brokerage account in which the broker lends the customer cash to purchase securities. The loan amount is collateralized by the securities purchased and any additional cash in the account.

-4-

**B. Even Assuming the PSR's Method of Calculation Is Correct, the Amount of Loss Claimed Is Inaccurate.**

The following creditors were listed as victims. Yet, as the table explains, many of these creditors cannot be "victims," because either they were secured creditors that did not file a proof of claim for any unsecured deficiency, priority creditors, their claim had been paid in full before the bankruptcy, or the claim listed was a duplicate claim.

| Creditor | Explanation Why Claimed Loss Amount Is Incorrect | Amount of Loss |
|---|---|---|
| Springleaf Financial Services ($7.858.81) | Fully secured loan to purchase Trailmanor Camper. Chapter 7 Trustee recovered trailer in bankruptcy case. | $0 |
| Citifinancial Auto ($13,027.00) | Automobile loan that Moazzeni has continued to pay. | $0 |
| Ocwen Loan Servicing ($31,521.39) | Arrears began to accrue on mortgage in 2010, after the charged course of fraudulent concealment had ended. Debt is secured. | $0 |
| Capital One Bank ($2,580.00) | Credit card belonging to Dianne Tarangelo that was paid off in 2004 | $0 |
| Citibank ($3,212.00) | Moazzeni was authorized user on Nasrin Moazzeni's credit card. Credit card has been fully paid off. | $0 |
| City of Philadelphia ($265.00) | Ticket given by City of Philadelphia for parking violation by Dianne Tarangelo. Fully discharged in Tarangelo's bankruptcy. | $0 |

| | | |
|---|---|---|
| Fleet Card ($4,218.00) | Company purchased by Discover Card. Debt is same as that listed for "Discover" | $0 |
| First & Citizens ($1.00 | Loan for Afton land. Fully paid off. | $0 |
| GE Money Bank ($580.85) | Company ceased operation in 1990s and claim does not appear to have been assigned. No proof of claim filed.[2] | $0 |
| HSBC Card ($767.50) | Loan for BOSE radio. Fully paid off. No proof of claim filed | $0 |
| Gemb/Lowes ($14,562.00) | Credit card belonging to Diane Tarangelo. Fully discharged in her bankruptcy. No proof of claim filed | $0 |
| MBNA America ($9,927.00) | Credit card belonging to Nasrin Moazzeni on which Moazzeni was an authorized user. Credit card has been fully paid off. | $0 |
| NCO-Medcir ($757.00) | Duplicate of American Medical Response claim. | $0 |

---

[2] In cases filed under Chapter 7 or Chapter 13, unsecured creditors must file proofs of claim in order to have their claims against the estate allowed. Fed. R. Bankr. P. 3002(a). By operation of Bankruptcy Rule 9006(b)(3) on Rule 3002(c), creditors in a Chapter 7 proceeding who do not file a proof of claim within 90 days after the meeting of creditors are barred from filing such a claim, and by operation of law their claim is disallowed in the case. *In re Davis*, 936 F.2d 771, 773 (4th Cir. 1991).

| | | |
|---|---|---|
| Nissan Motor Acceptance Corp. ($11,516.00) | Car loan for vehicle owned by Diane Tarangelo | $0 |
| State of New York ($6,671.53) | Student Loan debt that is not affected by bankrupcy. | $0 |
| West Asset ($327.00) | Duplicate of claim of Chippenham Johnston-Willis | $0 |

The amount of loss should accordingly be reduced by $107,792.08. The total loss using this calculation should accordingly be $381,138.87.

### C. The PSR's Tax Loss Amount Is at Variance with Records from the IRS and Virginia Department of Taxation.

The PSR provides that the loss to the IRS totals $259,589.65 and the loss to the Virginia Department of Taxation is $39,021.03. Yet, records Moazzeni acquired from these agencies show a significantly lower amount of loss. According to a payoff calculator provided on the IRS's website, Moazzeni owes only $140,458.79 in taxes. (*See* IRS Payoff Calculator, attached hereto as Exhibit A.) In addition, the Virginia Department of Taxation reports that Moazzeni owes $32,203.62. (*See* Copy of Online Chat with Va. Department of Taxation dated April 29, 2013, attached hereto as Exhibit B.) Using these records, the total loss attributable to Moazzeni's tax crime is $172,662.41.

## II. Restitution

### A. Using the Proper Calculation of Actual Loss, the Amount of Restitution Should Be $242,975.16.

When ordering restitution under the Victim and Witness Protection Act ("VWPA"), a court must consider: "(I) the amount of the loss sustained by each victim as a result of the

-7-

offense; and (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i). The amount of restitution under the VWPA is limited to the victim's actual losses. *See United States v. Serawop*, 505 F.3d 1112, 1124 (10th Cir. 2007) (finding district court that orders restitution in an amount greater than the total loss caused by the offense exceeds its statutory jurisdiction and imposes illegal sentence); *United States v. Bussell*, 414 F.3d 1048, 1061 (9th Cir. 2005) (reversing restitution order based on intended loss on grounds that restitution is limited to the victim's actual loss). The Government must establish the amount of loss for restitution by a preponderance of the evidence. *United States v. Mullins*, 971 F.2d 1138, 1147 (4th Cir. 1992).

The actual loss caused by Moazzeni's concealment of assets is far below the $190,320.27 stated in the PSR. First, as noted above, the intended loss to creditors when properly calculated is $99,832.55. The actual amount of loss should be further reduced by the amounts paid to the Trustee and distributed to creditors in Moazzeni's bankruptcy. According to the Chapter 13 Trustee's Final Report and Account, Moazzeni paid $31,273.99 into his Chapter 13 plan. (*See* Chapter 13 Trustee's Final Report and Account, *In re Moazzeni*, 07-30177-DOT (E.D. Va.), Doc. No. 102, attached hereto as Exhibit C.) Of this amount, $1,754.22 was paid to the Trustee as administrative costs and $29,519.77 was distributed to creditors. Thus, the amount of restitution attributed to the Bankruptcy Count should be $70,312.78. And the total amount of restitution for both the Tax and Bankruptcy Counts should be $242,975.19 ($172,662.41 (amount of actual loss on Tax Count) + $70,312.78 (amount of actual loss on Bankruptcy Count)).

## CONCLUSION

In summary, the amount of loss for Moazzeni's crime should be $272,494.75 and the amount due as restitution should be $242,975.19. Moazzeni requests all such additional relief as this Court deems appropriate.

Dated: June 10, 2013

Respectfully submitted,

**ARASH MOAZZENI**

By: _____/s/_____
John S. Davis
Joseph R. Pope
WILLIAMS MULLEN
A Professional Corporation
200 South 10th Street
P.O Box 1320 (23218-1320)
Richmond, VA 23219
Phone: 804.420-6296
Fax: 804.420.6507
jsdavis@williamsmullen.com
jpope@williamsmullen.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to:

Mike Gill, Esquire
Assistant U.S. Attorney
Eastern District of Virginia
600 E. Main St., Suite 1800
Richmond, VA 23229
Phone: 804.819.5400
Fax: 804.771.2316
mike.gill@usdoj.gov

_____/s/_____
Joseph R. Pope
Attorney for Defendant
Williams Mullen
200 So. 10th St.
P.O Box 1320 (23218-1320)
Richmond, VA 23219
Phone: 804.420-6296
Fax: 804.420.6507
jpope@williamsmullen.com